## CIRCUIT COURT OF BALTIMORE CITY.

Filed January 4, 1917.

### ALFRED H. BRAECKLEIN
VS.
### ALBERT M. HIEATZMAN AND THE SANITARY SEAL MANUFACTURING COMPANY, ETC.

*Myer Rosenbush* for Alfred H. Braecklein.

*James T. O'Neill* for Albert M. Hieatzman.

*McIntosh & Thrift* for Sanitary Seal Manufacturing Company.

DAWKINS, J.—

The bill in this case alleges that the plaintiff is the patentee of an improved device for sealing milk and other bottles. An interest in said device was transferred to certain parties (among them the defendant (Hieatzman) in order to have them become interested in forming a company for the placing of

the same upon the market with the understanding that the interest thus acquired would be reassigned to the plaintiff so as to enable him to turn over the entire patent to the company. Upon the formation of the company the parties so retransferring should receive stock in lieu of such interest. A corporation was formed with a capital stock of $250,000, divided into 25,000 shares of the par value of $10 per share. The interests were transferred to the company as agreed. A stock certificate for 1,275 shares was issued in the name of the defendant Hieatzman. Said certificate was issued to the defendant upon his promise to make sale of $3,000 of the capital stock of the company belonging to the plaintiff within ninety days from the formation of said company, and to pay $1,000 in cash to the plaintiff. The defendant would receive a number of shares equal to one-tenth of the number of shares to be issued to the plaintiff in payment for the letters patent. That the certificate for said stock when issued should be held in escrow by the officers of the company until said contract with the plaintiff was completed with the defendant Hieatzman. That the said certificate was to be held under instructions to the officers of the company and not to be delivered until the said Hieatzman had made good his promise above mentioned. That the certificate has been held by the company and more than ninety days have elapsed since its date. That the said Hieatzman has utterly failed to do more towards complying with his promise than to sell a few shares under a different arrangement, for which he was paid a commission of 10 per cent. That as the defendant had demanded the delivering of said certificate, in view of the entire failure on the part of the said Hieatzman to carry out his promise, the plaintiff prays that the said certificate be cancelled and declared void and that the defendant company be directed to issue to the plaintiff in his name in place of said certificate a new certificate for said stock. The defendant company practically admits so far as it can do so the facts of the bill. It raises no material question as to any statements therein contained. The plaintiff, however, is the president of the said company. The defendant Hieatzman contends that those who became incorporators and interested in the company became so through his personal efforts, and it was in consideration of his procuring persons to become incorporators and to take an interest in the business that the said one-tenth interest was transferred to him and the 1,275 shares of stock was not placed in escrow, but was put in a voting trust pool. He denies making any agreement to pay $1,000 in cash or to procure $30,000 worth of subscriptions to stock. He further says that so far from his owing anything to the plaintiff that the latter owes him a certain sum of money.

There is a sharp contradiction on the part of the witnesses as to the facts upon which this controversy rests. It is admitted that no actual money consideration ever passed in payment for the stock. The one-tenth interest in the patent was transferred to the defendant Hieatzman before the certificate was issued to the incorporators. It was conveyed back by him to the plaintiff and by the latter transferred to the company. The certificate was issued subsequently in the name of Mr. Hieatzman for the said one-tenth interest in the patent. The certificate (dated February 16, 1916) has always remained in the custody of the officers of the company. Why this should have been so is only explained by one or the other of two reasons:

1. That the stock was left there because all of the issue was held under a voting pool, or

2. Because it was not paid for by the defendant.

The voting trust agreement was manifestly never fully executed or lived under in any way. The statement of the secretary of the company as to the activities of the officers is far from satisfactory—especially when he says he does not know why the stock was left with the company. The paper, dated January 26, 1916, stating that the transaction was "legitimate in every particular" two weeks before the stock was issued must mean something. It could not indicate an actual sale, because, confessedly, nothing had been done by way of effecting a "legitimate sale." It is a fact that commissions were paid to and accepted by the defendant for sales made, which would not tend to show that the defendant has to be taken care of in any way for his services save by the payment of commissions, evidently getting away

from the original agreement by accepting such compensation. If there was a promise that $1,000 should be paid in cash and stock to the number of $30,000 worth should be sold before the defendant should become entitled to the 1,275 shares, it is entirely consistent that the certificate should be held pending the making good of such promise. There is no evidence that the promise was ever kept. There is abundant evidence that it was made. If no such promise was made and no voting trust agreement was in force, it is a singular circumstance that the defendant remained silent with his stock at the company's office without protest if he was entitled to have it. There seems but little doubt but that Messrs. Meister, Fuss and Kleist became interested in the company directly or indirectly through the efforts of the defendant, but for the interests bought by them the defendant received compensation by way of commissions. If no such commissions were paid, then this stock was part of the 3,000 shares agreed to be sold, which sales would not amount, so far as the testimony discloses, to a value of $30,000. Certain money was given to the defendant for various purposes, even though the $1,000 had never been paid. The explanations of the plaintiff as to loans is much more consistent than that of the defendant, apart from any corroboration. Why it was given is not very clear, but it does not affect the issue before us. The reason given by the defendant for the stock or the one-tenth interest in the patent having been given to him is that the plaintiff promised "to make it all right with him" if he interested people in the company, and in pursuance of that promise he did interest sundry people and helped to organize the company. For his services in that regard the one-tenth interest in the patent was actually given to him. The plaintiff contends that the interest was carelessly conveyed in advance with the understanding that it was to be paid for in the manner already stated and was to be held until the promise was made good. He says that the defendant having failed to carry out his part of the contract the stock reverted back to him under the agreement. The parties were friends. The first disagreement came when the plaintiff claimed a lien on the stock and refused to let it be delivered upon the demand of the defendant. If there was in the thought

of Mr. Hieatzman a voting trust controlling the stock, why should he make any demand or think he was entitled to possession of the stock. If he was entitled to it on account of the failure to carry out the pooling agreement, why not demand it before this time? Prior to that time both parties seem to have been silent as to the status of the stock, but the stock was in the safe in the company's office.

With this somewhat cursory statement of the testimony and the fair deductions from it, it must be perceived that to solve the question is not without difficulty. If the stock had been delivered at any time the plaintiff would have failed perhaps in proof necessary to entitle him to the relief he seeks, but as both parties to the transaction have acted as above indicated, taken with the facts admitted, that the only consideration that actually passed was a promise to "take care of him" made by the plaintiff to the defendant in return for services that were not performed, according to the preponderance of evidence, I am constrained to believe that the defendant has never paid for the interest in the patent, consequently he has never paid for the stock, or up to this time become entitled to receive it; so that whilst the proof is far from satisfactory, my judgment is that the plaintiff is entitled to the relief he seeks, unless the defendant pays the money and sells the stock as indicated. I will sign a decree in accordance with the views expressed.